# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2016 | **DATE** | April 30 2003 |
| **CASE TITLE** | Doris James v. Olympus Servicing LP et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion to reconsider dismissal of Counts V-VII of the original complaint [ ] is denied. Defendants' motion to dismiss certain counts of the second amended complaint [ ] is granted. Counts II, III, IV, and VI of the second amended complaint are dismissed with prejudice. The claims that remain are Counts I and V of the second amended complaint. A status conference is set for May 21, 2003, at 10:30 a.m.

(11) [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | number of notices | | |
| x | Notices MAILED by judge's staff. | | MAY 0 5 2003 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to _____ | | | | |
| KAM | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | | KAM mailing deputy initials | |

(Reserved for use by the Court)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DORIS JAMES,                          )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )     No. 02 C 2016
                                      )
OLYMPUS SERVICING, L.P. and           )
OLYMPUS GP LLC,                       )                **DOCKETED**
                                      )
          Defendants.                 )                MAY - 5 2003

**MEMORANDUM OPINION**

Before the court are two motions: (1) plaintiff's motion to reconsider our dismissal of Counts V-VII of the original complaint; and (2) defendants' motion to dismiss Counts II, III, IV, and VI of plaintiff's second amended complaint. For the reasons explained below, plaintiff's motion is denied, and defendants' motion is granted.

**BACKGROUND**

The facts of this case were described in our earlier opinion, and are as follows. Plaintiff, Doris James, brings this action against defendants Olympus Servicing, L.P. and Olympus GP LLC (collectively, "Olympus"), alleging that Olympus engaged in unlawful debt collection and fraudulent mortgage servicing practices and failed to provide plaintiff with her account history when requested.

The second amended complaint alleges the following facts. In May 2000, plaintiff obtained a mortgage loan to refinance various personal debts. In October 2000, servicing of the loan was transferred to Litton Loan Servicing L.P. ("Litton"). On February 2, 2001, Litton sent plaintiff a notice of default. Between February 2, 2001 and April 16, 2001, Litton transferred servicing of the loan to Olympus Servicing. The loan was in default at the time.

"Olympus accelerated plaintiff's note and mortgage and refused to accept further payments on or before June 21, 2001."[1] (Second Amended Complaint, ¶ 15.) Then, on August 7, 2001, Olympus caused a foreclosure proceeding to be filed against plaintiff. Some time between August 15, 2001 and December 31, 2001, plaintiff's loan was reinstated. (In a letter to plaintiff and in its briefs, Olympus claims that the loan was reinstated on August 15.) The mortgage foreclosure action was dismissed on December 31, 2001.

"Olympus assessed at least one and possibly additional late charges against plaintiff with respect to periods after the loan was accelerated and before it was reinstated." (Second Amended Complaint, ¶ 18.) Olympus continued sending monthly loan statements to plaintiff. Following reinstatement of the loan (assuming it occurred on August 15, 2001), Olympus sent plaintiff

---

[1] The wording of this sentence is confusing, but we interpret it to mean that, some time on or before June 21, 2001, Olympus accelerated plaintiff's loan.

a "notice of intent to foreclose" on August 22, 2001 (the "August Notice"). Olympus also began sending plaintiff notices asserting that she was not maintaining hazard insurance on the property. The second amended complaint states that, on information and belief, based on statements made to plaintiff by a representative of Olympus on February 28, 2002, Olympus took plaintiff's monthly payments and applied them to charges for unnecessary force-placed hazard insurance instead of principal and interest on the mortgage loan. Plaintiff had her own insurance and attempted to inform Olympus. In order to determine the allocation of her payments, on February 9, 2002, plaintiff requested an account history and documentation of all charges other than principal, interest, and late charges. Olympus failed to acknowledge or respond to this request within 20 business days.

Plaintiff filed this action on March 19, 2002. In a memorandum opinion dated October 8, 2002, we granted defendants' motion to dismiss Counts II, III, IV, V, VI, and VII of the original complaint, and denied the motion as to Count I. We also dismissed Count VIII. We gave plaintiff leave to amend Counts II, III, IV, and VIII.

On November 13, 2002, plaintiff filed a second amended complaint. The second amended complaint alleges violations of the Fair Debt Collection Practices Act (the "FDCPA") (Counts I, II, and VI), the Illinois Consumer Fraud and Deceptive Business Practices

Act (the "CFDBPA") (Count IV), and the Real Estate Settlement
Procedures Act (Count V). The complaint also seeks a declaration
that Olympus is prohibited from charging post-acceleration late
charges (Count III).[2]

Defendants now move to dismiss Counts II, III, IV, and VI of
the second amended complaint. Plaintiff moves for reconsideration
of the dismissal of Counts V, VI, and VII of the original
complaint.

## DISCUSSION

### *Plaintiff's Motion to Reconsider Dismissal of Counts V-VII*

In our memorandum opinion of October 8, 2002, we dismissed
Counts V-VIII of the original complaint. Counts V and VII alleged
that Olympus violated the FDCPA and the CFDBPA by "adding
attorney's fees, legal fees, and related expenses to the borrower's
account" when those fees had not been awarded or approved by a
court. Count VI sought restitution for, or cancellation of, those
fees. Our reasoning for dismissing Counts V-VII was as follows:

> The Note and Mortgage in this case clearly authorize
> the assessment of reasonable attorney's fees incurred in
> relation to enforcing the Note and Mortgage. The Note
> states, "If the Note Holder has required me to pay
> immediately in full as described above, the Note Holder
> will have the right to be paid back by me for all of its
> costs and expenses in enforcing this Note to the extent
> not prohibited by applicable law. Those expenses
> include, for example, reasonable attorneys' fees."
> (Complaint, Ex. A, Note, ¶ 6(E).) The Mortgage provides

---

[2] On February 10, 2003, we granted plaintiff's motion for class
certification, and on March 6, 2003, we entered a class certification order.

that in the event of a default by the Borrower, the Lender may pay for whatever is necessary to protect the value of the property, including appearing in court and paying reasonable attorney's fees, and that these payments shall become additional debt of the Borrower. (Complaint, Ex. B, Mortgage, ¶ 7.) In the section titled "Acceleration; Remedies," the Mortgage also states: "Lender shall be entitled to collect expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorney's fees and cost of title evidence." (Complaint, Ex. B, Mortgage, ¶ 21.)

Plaintiff does not dispute that the Note and Mortgage authorize reasonable attorney's fees, and does not allege in the complaint that the amount of attorney's fees was unreasonable, but argues that the assessment of attorney's fees <u>without court approval</u> violates Illinois law and therefore also violates the FDCPA.[3] Plaintiff, however, cites no authority in support of this argument, and our own research revealed none. The cases cited by plaintiff merely stand for the principle that a party seeking to recover attorney's fees that are challenged as unreasonable bears the burden of demonstrating reasonableness. They do not stand for the proposition that Illinois law prohibits the imposition of attorney's fees, pursuant to a contract, without a court order. Accordingly, plaintiff's claims in Counts V-VII for violation of the FDCPA, CFDBPA, and restitution must be dismissed.

<u>James v. Olympus Servicing, L.P.</u>, No. 02 C 2016, 2002 WL 31307540, at *3-4 (N.D. Ill. Oct. 9, 2002).

Plaintiff contends that we should reconsider our ruling based on Magistrate Judge Keys's ruling and memorandum opinion in <u>Shula v. Lawent</u>, No. 01 C 4883, 2002 WL 31870157 (N.D. Ill. Dec. 23, 2002), which was issued over two months after our memorandum

---

[3]  Section 1692f(1) of the FDCPA prohibits the collection of any amount including any fees or charges incidental to the principal obligation "unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

opinion. According to plaintiff, <u>Shula</u> is inconsistent with our ruling. We disagree.

In <u>Shula</u>, the plaintiff had received a letter from defendant, a debt collector, demanding the payment of court costs related to the collection of a debt for medical treatment. Plaintiff moved for summary judgment on his claim that the letter violated the FDCPA because the court costs were not expressly authorized by agreement, nor were they permitted by law. Defendants admitted that plaintiff had not entered into any agreement requiring him to pay court costs and that no judgment existed against plaintiff awarding court costs to defendant, but they argued that an Illinois statute permitted the collection of court costs.

Magistrate Judge Keys noted that the Illinois statute provided for the <u>possibility</u> of court costs by stating that they were "recoverable," but the statute did not make it automatic every time the statutory requirements were met. The parties still had to request a court order imposing such costs. Therefore, Magistrate Judge Keys concluded that the court costs demanded by defendant were not "permitted" by law under the FDCPA, and granted summary judgment for plaintiff on that claim. <u>Shula</u>, 2002 WL 31870157, at *10.

The instant case is easily distinguishable from <u>Shula</u>. There was no "agreement creating [a] debt" at issue in <u>Shula</u>; rather, the court was dealing with the "permitted by law" prong of § 1692f(1).

Here, we have the Note and Mortgage. The only question, then, is whether the Note and Mortgage "expressly authorize" reasonable attorney's fees. They do; therefore, plaintiff cannot assert an FDCPA or CFDBPA claim for attorneys' fees, or seek restitution.

In her reply brief, plaintiff asserts that the Seventh Circuit's ruling in Veach v. Sheeks, 316 F.3d 690 (7th Cir. 2003), controls this case. Plaintiff also relies on Bernstein v. Howe, IP 02-192-C-K/H, 2003 WL 1702254 (S.D. Ind. Mar. 31, 2003). Both cases are distinguishable because they do not address whether Illinois law or the FDCPA prohibits the assessment, without a court order, of attorney's fees that have actually been incurred, when they are expressly authorized by contract.

None of the cases relied upon by plaintiff bears upon the issue in this case. Accordingly, plaintiff's motion for reconsideration is without merit.

### *Defendants' Motion to Dismiss Counts II, III, IV & VI*

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294 (2d ed. 1990). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Hentosh v. Herman M. Finch Univ. of Health Sciences, 167 F.3d 1170, 1173 (7th Cir. 1999); Jang v. A.M. Miller

& Assocs., 122 F.3d 480, 483 (7th Cir. 1997). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); Jones v. General Elec. Co., 87 F.3d 209, 211 (7th Cir.), cert. denied, 519 U.S. 1008 (1996).

## A.  Late Charges (Counts II, III, IV)

Counts II and IV of the complaint allege that Olympus violated the FDCPA and the CFDBPA by assessing late charges for periods after plaintiff's loan was accelerated and before it was reinstated. "For example, in Plaintiff's case, on August 15, 2001, Olympus assessed at least two post-acceleration/pre-reinstatement late charges for the due dates of July 1, 2001 and August 1, 2001." (Second Amended Complaint, ¶ 41.) Count III seeks a declaration that Olympus is not entitled to collect post-acceleration late charges under the terms of the Note or Mortgage.

We dismissed Counts II-IV in our earlier memorandum opinion because the complaint failed to specify when plaintiff's loan was reinstated and also failed to specify when the late charges were assessed. We explained that whether plaintiff had stated viable claims based on late charges depended upon exactly when those charges were assessed in relation to the acceleration and reinstatement of the loan.

Plaintiff now has amended the complaint to allege that her loan was reinstated "some time between August 15, 2001 and December 31, 2001." (Second Amended Complaint, ¶ 17.) In a footnote to ¶ 17, plaintiff adds that Olympus sent a letter to plaintiff stating that her loan was reinstated on August 15, 2001, but implies that this statement may be "false" because the foreclosure action against plaintiff was not dismissed until December 31, 2001. Olympus claims that plaintiff's loan was in fact reinstated on August 15, 2001.

The second amended complaint describes the timing of the allegedly wrongful late charges as follows: "Olympus assessed at least one and possibly additional late charges against plaintiff with respect to periods after the loan was accelerated and before it was reinstated, as shown by the printout supplied by Olympus. For example, on August 15, 2001, Olympus charged late charges from July 1, 2001 and August 1, 2001 to plaintiff's account." (Second Amended Complaint, ¶ 18 (citation omitted).)

Olympus argues that these allegations do not state claims based on the imposition of late charges because plaintiff still does not sufficiently allege that Olympus assessed late charges during the time the loan was accelerated. Olympus contends that it is not wrongful, pursuant to the Note and Mortgage, to assess late charges upon reinstatement (which, according to defendant, occurred on August 15, 2001 and, according to plaintiff, may have occurred

on that date) "with respect to periods" when the loan was accelerated.

We agree with Olympus that plaintiff fails to state FDCPA or CFDBPA claims based on late charges. Plaintiff alleges that, when Olympus reinstated her loan, she was assessed late charges with respect to months during which her loan had been accelerated. These allegations do not state an FDCPA or CFDBPA violation because plaintiff's Mortgage expressly conditions reinstatement on the Borrower's payment of "all sums which then would be due under this Security Instrument and the Note <u>as if no acceleration had occurred</u>" and the Borrower's curing of "any default of any other covenants or agreements." (Second Amended Complaint, Ex. B, Mortgage, at 5 (emphasis added).) Because the assessment of late charges upon reinstatement for months during which plaintiff's loan was accelerated is expressly authorized by the Mortgage, plaintiff fails to state an FDCPA or CFDBPA claim, and Counts II, III, and IV must be dismissed.

## B.   **Notice of Intent to Foreclose (Count VI)**

Count VI is a claim that Olympus violated several provisions of the FDCPA by sending plaintiff a notice of intent to foreclose. The second amended complaint states: "If, as Olympus claims, it reinstated plaintiff's loan on August 15, 2001, then Olympus violated the FDCPA by sending the letter dated August 22, 2001 which contained a threat to foreclose once again, immediately after

Olympus claims to have reinstated the loan." (Second Amended Complaint, ¶ 78 (citations omitted).)

Olympus asserts that the Mortgage authorizes (indeed, compels) the sending of such a notice when the borrower is in default, and plaintiff fails to state an FDCPA claim because she does not allege that she was not in default. Olympus explains that plaintiff's loan was reinstated on August 15, 2001 based on her partial payment of the full amount due, and that payments for July and August were still due. Accordingly, plaintiff was still in default on the loan, and the notice of default required by the Mortgage was sent to plaintiff.

Plaintiff argues that it was "unfair" and "deceptive" for Olympus to have sent the August Notice, but the facts alleged fail to state a claim. The documents attached to the second amended complaint show that, on August 15, 2001, plaintiff made partial payment of the entire amount that was past due on her loan. Even though plaintiff's loan was reinstated based on these partial payments, she was still in default at the time Olympus is alleged to have sent the Notice, and plaintiff does not claim otherwise. The default was due to the fact that plaintiff had not yet made her payments for July and August. The Mortgage expressly required Olympus to send a notice of default prior to acceleration following plaintiff's breach of any agreement in the Mortgage (one of which was an agreement to make timely monthly payments on the

loan). Accordingly, plaintiff fails to state an FDCPA claim based on the August Notice.[4]

### CONCLUSION

For the foregoing reasons, plaintiff's motion to reconsider dismissal of Counts V-VII of the original complaint is denied.

Defendants' motion to dismiss certain counts of the second amended complaint is granted. Counts II, III, IV, and VI of the second amended complaint are dismissed with prejudice.

The claims that remain are Counts I and V of the second amended complaint.

A status conference is set for May 21, 2003, at 10:30 a.m.

DATE:        April 30, 2003

ENTER:

_____

John F. Grady, United States District Judge

---

[4] Because plaintiff fails to state a claim based on the August Notice, we need not address Olympus's argument that the claim is barred by the statute of limitations.